[Crim. No. 3125. Second Appellate District, Division One.—September 8, 1938.]

THE PEOPLE, Respondent, v. CHARLES E. MELTON, Appellant.

P. E. Durkee for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

DORAN, J.—Defendant, who was charged in an indictment with two counts of the crime of grand theft, was found guilty thereof by a jury. The appeal herein is from the judgment, and from the order denying defendant's motion for a new trial.

It appears from the evidence that on June 24, 1937, defendant represented himself to Mrs. Mary C. Hill, complaining witness, as a Mr. Hershfield, a representative of the "World Oil Company" of Fort Worth, Texas. He stated to her that he understood she had 1,000 acres of oil land in Chavez County, New Mexico, and that he had been authorized by his company to make an offer on the land; that he would give her a $4,000 cash bonus and a one-eighth royalty on all the oil taken therefrom. Mrs. Hill owned one-half of the property, her sister, Mrs. Laura McGillivray, owned a quarter of the property and a Mr. Clark owned the other quarter. Defendant "took out of his pocket a book that looked like a check book" and offered to write a check for $1,000 at that time, which Mrs. Hill did not accept. She told defendant that she wished to talk to the other two parties before she would do anything. On the following day defendant returned to Mrs. Hill's home and repeated his offer to her and to Mrs. McGillivray. No payment of $1,000, however, was offered by defendant at this time. He informed them that it would be necessary to obtain a survey of the property before his company would execute the lease; that such survey would cost $500, but that his company would pay one-half of this sum if they were permitted to make the survey, provided the owners of the property would put up the other $250. Mrs. Hill, Mrs. McGillivray and defendant then drove to a bank; Mrs. McGillivray withdrew $250 in cash and handed the money to the defendant, who stated that the survey would be sent to them within ten days. This transaction represents count one of the indictment.

Within a few days thereafter Mrs. Hill received a telephone call from someone who made her an offer of $8,000 and a one-eighth royalty. Mrs. Hill testified that defendant called upon her on July 1st, and that she then told him "that we had had an offer of more money for the land and that we didn't feel that we could afford to let him have it for that figure, and he said $4,000 was all that his company would

allow him to give. And he said, 'Well, what should we do in regard to the money my company has put up? My company has already put up $250 for the survey and if they don't get the land they will be sore at me for not giving you a deposit in the first place and making things more secure.' So he said, 'In that case I can't blame you an awful lot but I am very much disappointed because my commission would amount to about $400 on this sale.' He says, 'Of course, I am knocked out of that.' He says, 'But I will tell you what I will do. If you will give me the $250 to reimburse my company for the money they put up I will give you a receipt releasing you from all obligations with my company,' . . . '' On the following day defendant repeated the proposition to Mrs. Hill and Mrs. McGillivray, who accepted the offer. At this time defendant received the second sum of $250, which transaction represents count 2 of the indictment.

Shortly thereafter Mrs. Hill received a document through the United States mail postmarked ''Santa Fe, New Mexico'', which she described as looking like an ''old envelope. The envelope was ragged as though it had saw hard usage.'' A document was contained in the envelope, wrapped in a piece of blue paper which had no writing on it. It was stipulated between counsel that the form of this document was printed by a stationery store in Los Angeles, and that it sold for five cents a copy. With regard to this document, referred to as exhibit No. 5, defendant testified as follows: ''Q. (By Mr. Durkee, Defendant's Attorney): Exhibit No. 5, a map, calling your attention to this map have you ever seen that before? A. I have. Q. Do you know who made that map? . . . A. I did. Q. For what purpose? A. Working copy for an engineer. . . . Q. You turned that map over to whom? A. William D. Barnett. . . . I turned the map over to Mr. Barnett as a working model of what I wanted him to produce for a certain fixed sum that I was paying him. . . . Q. (By Mr. Frampton, Deputy District Attorney): How much of this so-called plat, Exhibit 5, did you prepare? . . . A. Prepared all with the exception of this part which is attached to it. Q. You signed the name of J. B. Barber to it? A. Yes, sir. Q. Who is Mr. Barber? A. Lieut. Colonel of the United States Army. Q. What is his address? A. U. S. Army. Q. Where is that? A. In the U. S. of America. . . . Q. What is his occupation other than being a commissioned

officer of the United States Government? A. I don't know. Q. Did you sign the attestation, 'C.E.' under his name? A. Yes, sir. . . . Q. What connection did Barber have with this transaction? A. Absolutely none. . . . Q. What was your intention when you made this document? A. As a working model for the engineer. . . . Q. You immediately turned it over to Mr. Barnett? A. Turned over a portion of it. Q. Was Mr. Barnett an engineer? A. He is a licensed real estate broker.. Q. Is he an engineer? A. No, sir.''

The evidence discloses that subsequent to the completion of the above transactions, defendant, on two different occasions, had introduced himself or had gone under the names of ''Gordon'' and ''Alexander''.

One George H. Campbell, federal receiver for the World Oil Company, located at Fort Worth, Texas, testified in substance that he has had full supervision of that company under the orders of the court since July, 1930; that he was in full charge of the operation of the company, employing all the help; that he did not know the defendant and had never seen him; that the company at no time had any interest in any property in Chavez County, New Mexico; that his company never received any money purporting to be for a survey of the land in question; and that the company never paid out the sum of $250 for the purpose of surveying said land.

With regard to the defendant's offer to write a check for $1,000, heretofore mentioned, defendant testified as follows: ''Q. (By Mr. Frampton): You had a bank account with about $5000 in it, didn't you? A. No. Q. How did you expect to pay $1000 down and $4000 to Mrs. Hill? A. In cash. Q. Did you have that in the bank? A. No sir. Q. Didn't you pull out a check book and show it to Mrs. Hill? A. No sir. Q. You carried that around on your person? A. Not $5,000. Q. Where? . . . A. In a safety deposit box. Q. In what bank. A. Not in any box. Q. Did you have it out in a woodpile in your yard? A. In a hotel.''

Defendant further testified, in response to an inquiry as to what was done by him with the money received from the complaining witness, as follows: ''Q. What did you do with the first $250 that was given to you on June 25, 1937? A. Together with an additional $150 I paid to William D. Barnett. Q. For what purpose did you give it to Mr. Barnett? A.

For the bringing down of the title, the survey certificate, a geological report on the lease. Q. Has Mr. Barnett ever given that money back to you? A. No, sir.''

The defense consisted of the testimony of the defendant and six character witnesses. Notwithstanding the evident value and importance that would have attached to any evidence tending to corroborate the defendant's story, none was forthcoming at the trial. Even the purported individual, referred to by defendant as ''William D. Barnett'', did not appear as a witness. As to the character evidence produced in behalf of the defendant, the record appears to justify the argument of the district attorney to the jury with regard thereto, which was as follows: ''Ladies and gentlemen of the jury, there isn't very much I can do about testimony of that kind. You are going to have to weigh testimony of that kind. All I can say is that witnesses of that character and this defendant belong to each other by the right of mutual discovery and reciprocal attachment and I wouldn't for a minute disturb such a beautiful relationship between witnesses of that kind and this defendant. They are welcome to each other.''

Appellant advances the usual contentions, in substance, that the evidence is insufficient to support the judgment; that the trial court erred in the admission and rejection of evidence; that the district attorney was guilty of prejudicial misconduct; and that the court erred in refusing to give certain instructions requested by the defendant.

Without going into further detail, it is sufficient to state that a review of the record reveals all of said contentions to be without merit, and no error appears of that prejudicial character that would justify a reversal.

For the foregoing reasons the judgment and the order denying a new trial are, and each of them is, affirmed.

York, P. J., and White, J., concurred.